UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15 CR 25 SNLJ (ACL) |
| | ) |
| DANNY RAY REED, SR., | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned are the Defendant's Motions to Suppress (Docs. 34, 42) physical evidence seized from his residence pursuant to search warrants that were sought for the Defendant's residence on January 3, 2013 and May 22, 2014, as well as statements he made to law enforcement officers on May 30, 2014. In regard to the January 3, 2013 Search Warrant, the Defendant has been charged with the possession of multiple firearms at a time when he was a previously convicted felon. The May 22, 2014 Search Warrant resulted in the seizure of firearms, ammunition, heroin, crack cocaine, drug paraphernalia, and other evidence.

The Defendant asserts the following grounds for suppression: 1) the search warrants dated January 3, 2013 and May 22, 2014 were invalid because they were not signed by a judge, 2) the May 22, 2014 search warrant was not supported by probable cause, 3) any statements made by the Defendant on May 30, 2014 were involuntary, elicited by coercion, and in violation of the Fifth Amendment, and 4) Federal Rule of

Criminal Procedure 41 was violated in that the Defendant did not receive a copy of the Search Warrant or the inventory of items seized.  The Defendant requests the suppression of the evidence seized from his residence, as well as the statements he made on May 30, 2014.

The Government filed a response and post-hearing brief in opposition to the Defendant's claims.  (Docs. 35, 51.)  Following the evidentiary hearing, the Defendant submitted post-hearing briefs.  (Docs. 50, 54.)

In consideration of the pleadings identified above, as well as all exhibits admitted into evidence, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's Motions to Suppress be denied.

## I.  Findings of Fact

In the Spring of 2014, Detective Jason Morgan was investigating the Defendant for distribution of heroin.  Law enforcement officers had received information from numerous people, including individuals who lived near the Defendant's residence, that the Defendant's home was a hot spot for heroin distribution.  Specifically, neighbors complained that "the amount of traffic was unreal for that neighborhood."  Detective Morgan explained that law enforcement had been receiving information about the Defendant's residence for a long time.  During the several weeks leading up to the May 22, 2014 Search Warrant, law enforcement had been specifically watching the Defendant's residence.  In addition, Detective Morgan indicated that undercover officers working in the area had received information regarding activity at the Defendant's residence but were unable to get into the Defendant's residence.

Around that same time period, James Hovis (a man known as "a heavy heroin user") was arrested for shoplifting on multiple occasions. Following one of Hovis' arrests, Detective Morgan interviewed him. Hovis identified the Defendant as his heroin supplier and described the layout of the Defendant's residence. Hovis also indicated that the Defendant generally kept heroin in his pocket in a metal tin.

On May 21, 2014, Detective Morgan and another officer were conducting surveillance of the Defendant's residence as part of the drug investigation. Around 4:58 p.m., they observed Hovis leaving the Defendant's residence. The officers ran Hovis for warrants and found that he was wanted on an outstanding warrant for shoplifting. The officers stopped Hovis to arrest him on the warrant and found that he was in possession of heroin and Hydrocodone. Hovis was arrested and booked on the shoplifting warrant as well as charges related to the drugs he possessed. Hovis was interviewed at the police station and indicated that he had just purchased $25 worth of heroin from the Defendant for people who were sitting in a truck that was parked down the street. Hovis reported that the Defendant removed the heroin that Hovis purchased from a metal tin that the Defendant had in his pocket.

When the officers approached Hovis after he exited the Defendant's residence and arrested him, the Defendant was standing on his front porch watching Hovis' interaction with the officers. During the suppression hearing, Detective Morgan did not know the status of Hovis' case in state court and was not aware of any consideration being given to Hovis for the information Hovis provided.

The next day, May 22, 2014, Detective Morgan prepared an Application for Search Warrant and Affidavit for the Defendant's residence. The Affidavit included four paragraphs of information. The first paragraph addressed Detective Morgan's employment and training. The remainder of the Affidavit, paragraphs two through four, contained the information that led Detective Morgan to believe that there was probable cause to search the Defendant's residence for evidence related to drugs.

Paragraph two provided that Detective Morgan and another officer were conducting surveillance "in the area of Kinzer and Selma Streets in Poplar Bluff" on May 21, 2014. At approximately 4:58 p.m., they saw James Hovis depart the residence located at 803 Kinzer Street. The officers observed Hovis walk off the front porch and toward a parked vehicle that was occupied by three people. The officers knew both Hovis and the Defendant (the occupant of 803 Kinzer) "to be involved with heroin distribution."

Paragraph three of Detective Morgan's Affidavit relayed that the officers stopped Hovis as he was headed toward the parked vehicle. They checked Hovis for warrants and confirmed that he was wanted on a shoplifting warrant out of Dexter Municipal Court. Hovis was placed under arrest. A search incident to his arrest resulted in the seizure of a small bag containing a substance that field-tested positive for heroin and eight suspected hydrocodone tablets.

Finally, paragraph four of the Affidavit explained that Hovis was transported to the police department, processed, and advised of his *Miranda* rights. Hovis agreed to speak with Detective Morgan about the drugs that were seized from him. Hovis stated

that he purchased the heroin from the Defendant for $25. He indicated the purchase occurred just prior to the officers stopping him as he left the Defendant's residence. Hovis added that he saw the Defendant "in possession of an additional quantity of heroin packaged for sale, concealed in a small container inside his pants pocket." Hovis also admitted to purchasing heroin from the Defendant on numerous prior occasions.

Detective Morgan signed the Application for Search Warrant and attached Affidavit at 4:00 p.m., on May 22, 2014. Shortly thereafter, he presented them to Judge Bloodworth who signed the Search Warrant at 4:30 p.m.

The Search Warrant was executed on May 30, 2014. The Defendant and a woman were present. Detective Morgan made contact with the Defendant and advised him of the *Miranda* warning by reading the warning from an application on his cellular phone. After hearing the warning, the Defendant indicated that he understood his rights. Detective Morgan asked the Defendant to show the officers the location of any drugs in the home. The Defendant denied drugs were present. Detective Morgan asked the Defendant to empty his pockets. The Defendant removed a metal tin from his pocket that contained heroin. The Detective also asked for the Defendant to remove his hat, a search of which revealed additional drugs, two rocks of crack cocaine. The Defendant then admitted the metal tin contained heroin and that his hat contained crack cocaine.

The Defendant was not handcuffed when Detective Morgan spoke to him. Nor did the officers display their firearms while speaking with the Defendant. Detective Morgan described the interaction as a calm contact. No threats were made against the Defendant.

Detective Morgan believed the Defendant understood the questions asked of him. The Defendant did not sign a *Miranda* waiver form and his statements were not recorded.

Following the discovery of the drugs on the Defendant's person, he was arrested and transported to the jail.

A search of the residence resulted in the discovery of a firearm, ammunition, the previously described drugs, drug paraphernalia, and other evidence. By the time the search was completed, the Defendant had already been transported to the jail and he was not available to sign the Acknowledgement of Seizure on the property receipts. Detective Morgan left a copy of the Search Warrant and Official Property Receipts listing the items that had been seized at the residence. The copies of the Property Receipts that were left at the residence were carbon copies. Detective Morgan indicated that it has always been his practice to leave copies of search warrants and property receipts after executing search warrants, adding that he typically leaves the copies on "the refrigerator or somewhere noticeable." The undersigned credits Detective Morgan's testimony that a copy of the Search Warrant and property receipts were left at the Defendant's residence at the conclusion of the search.

The Defendant was also questioned about a firearm that was found under his bed. He told Detective Morgan that the firearm had been left by his brother. Detective Morgan believed the inquiry regarding the gun occurred either at the jail after the search was completed or at the Defendant's residence. Detective Morgan estimated that the Defendant was present for the first fifteen to twenty minutes of the search and that the

search continued for an additional couple of hours after the Defendant was transported to the jail.

During the hearing, the Defendant expressed doubt regarding the authenticity of the Search Warrant that is the subject of his Motions, as well as a Search Warrant that was issued on January 3, 2013. The Defendant believes the Search Warrants are invalid because 1) the copies he received in discovery did not include a judge's signature; 2) the discovery copies were also on one sheet of paper in that the first page of the Search Warrant was on one side and the second page was on the back side of the paper, rather than being two separate pages; and 3) the certified copies were signed by Sandy Trout rather than Circuit Clerk Cindy Bowman. The Government's attorney relayed that the discovery copy is what was provided from the case agent and that said copies are not always signed copies. He also stated that the Defendant's original counsel has a practice of making two-sided copies of discovery documents in an effort to save paper. Detective Morgan testified that he maintained a copy of the Search Warrant that was signed by the judge, as well as an unsigned copy, and that the unsigned copy is what was sent to the prosecutor.

A certified copy of the May 22, 2014 Search Warrant was submitted as Government Exhibit #1 (entered as Doc. 55) during the hearing. Detective Morgan testified that he received it on August 5, 2015 from an employee in the Butler County Circuit Clerk's Office. The last page of the Application for Search Warrant, attached Affidavit, Search Warrant, and the back of each page of the Return/Inventory contain a "Certificate of True Copy" sticker, which provides that each page is "a true copy of

original as the same appears in my office" signed by Deputy Clerk Sandy Trout.  Each page also bears a "Cindi Bowman Circuit Clerk Filed" stamp date of May 22, 2014.  The Application, Affidavit, and Warrant also bear a fax stamp from "City of PB-Police" dated May 22, 2014 at 16:41.  Furthermore, following the execution of the search warrant, Detective Morgan preserved copies of all the photographs and reports concerning the search of the Defendant's residence on May 30, 2014, which included a copy of the Search Warrant signed by Judge Bloodworth on May 22, 2014.  *See*, Government Exhibit #2 entered as Doc. 56 at 124-125.

With the consent of the parties, the Government requested that copies of the Search Warrants in question be faxed directly from the Butler County Circuit Clerk's Office to the undersigned. When said documents were received, an electronic copy (Doc. 57) was forwarded to the parties.  The Defendant submitted his discovery copy of the May 22, 2014 Search Warrant with one of his post-hearing briefs.  (Doc. 54-1.)  That copy does not contain a date and time for issuance or a judge's signature.  Said copy does include a small circular stamp toward the bottom right of each page with the words "Poplar Bluff Police-Copy, D.S.N. 200."  *Id*. at 1-2.  The undersigned has compared the certified copy of the May 22, 2014 Search Warrant that was submitted during the hearing (Gov't. Ex. #1/Doc. 55) to the copy that was received directly from the Butler County Circuit Clerk's Office (Doc. 57 at 7-8).  The copies are identical with the exception that

the faxed copies[1] do not have a "Certificate of True Copy" sticker.  Additionally, the January 3, 2013, Search Warrant (Doc. 57 at 16-17) was examined by the undersigned; it contains a judge's signature, as well as a date and time for issuance.

The undersigned finds that the January 3, 2013 and May 22, 2014 Search Warrants for the Defendant's residence were signed by a Butler County Circuit Court Judge.  There is no evidence to support the Defendant's allegation that said warrants are invalid because they were not signed by a judge.  The Defendant did not challenge the January 3, 2013 Search Warrant on any other ground, as a result there will be no further discussion concerning it.

## II.  Conclusions of Law

The Defendant attacks the validity of the May 22, 2014 Search Warrant by arguing that the information contained in it did not constitute probable cause to search the Defendant's residence.  The Defendant claims that the only information relied upon by Detective Morgan was Hovis' claim that the Defendant sold drugs to him; no officer observed the transaction.  The Defendant further suggests that Hovis is not reliable in that he was a known drug user and involved in heroin distribution.  The Defendant believes there should have been some police corroboration of Hovis' information.  The Defendant's argument fails.

---

[1]   Additionally, since the copies were faxed to the undersigned, the documents include a new fax stamp dated 12/03/2015, the day the Butler County Circuit Clerk's Office faxed the Search Warrants to the undersigned.

## II.A. The search warrant was supported by probable cause.

Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Whether probable cause has been established involves the practical common sense evaluation of the totality of the circumstances. *Gates*, 462 U.S. at 238.

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States*, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* at 632. All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be searched. *Gates, supra*. Also, affidavits should not be read in a hypertechnical manner. *See United States v. Ventresca*, 380 U.S. 102 (1965).

Probable cause may be found in hearsay statements from reliable persons, *Gates*, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by

independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, *McDonald v. United States*, 335 U.S. 451, 454 (1948). While these are some of the ways in which probable cause is commonly established, they are by no means all-inclusive. Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. *Gates*, 462 U.S. at 230. "'The preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination' as to whether an affidavit establishes probable cause." *United States v. Leon*, 468 U.S. 897, 914 (1984).

When an informant's information amounts to an admission that the informant has committed a crime, the admission carries its own indicia of reliability. In *United States v. Harris*, 403 U.S. at 583, 91 S.Ct. at 2082, the Supreme Court of the United States said:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility–sufficient at least to support a finding of probable cause to search.

*See also United States v. Reivich*, 793 F.2d 957, 959-60[1] (8th Cir. 1986); *United States v. Pennington*, 287 F.3d 739, 742 (8th Cir. 2002) (fact that an informant implicated himself in criminal activity to the police supports a finding of probable cause to search); *State v. Erwin*, 789 S.W.2d 509, 511 (Mo.App. 1990). An informant's admissions regarding involvement in recent and continued illicit activity has the effect of enhancing the informant's credibility and reliability rather than deflating it.

As the Supreme Court noted in *Gates*, ". . .even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. *See also United States v. Carter*, 413 F.3d 712, 714 (8th Cir. 2005).

An examination of the information contained in the Affidavit supports that there was sufficient probable cause to search the Defendant's residence. The Affidavit revealed that while law enforcement officers were conducting an unspecified narcotics investigation near the Defendant's home, they observed Hovis leave the Defendant's residence. The officers were familiar with Hovis and the Defendant; Detective Morgan characterized them as known "to be involved with heroin distribution." The officers observed that Hovis was headed toward a vehicle parked down the street and that there were three individuals in the vehicle. The officers stopped Hovis as he was walking toward that vehicle. The officers had confirmed that Hovis had an outstanding arrest warrant for shoplifting. Hovis was arrested and a search of his person revealed heroin and hydrocodone pills. After being transported to the police station, Hovis explained that he purchased the heroin from the Defendant immediately prior to the officers stopping him. Hovis also stated that the Defendant possessed additional heroin that was packaged for sale. Hovis indicated the Defendant was keeping that heroin "in a small container inside his pants pocket." Finally, Hovis "admitted to purchasing heroin from [the Defendant] on numerous prior occasions."

The undersigned concludes that the information contained in the Affidavit provided at least a "fair probability" that items related to the possession and distribution of controlled substances would be found within the Defendant's residence. Therefore, probable cause existed to search the Defendant's residence and his Motion to Suppress Evidence for lack of probable cause should be denied.

**II.B.  Good Faith**

Further, while evidence obtained as a result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. *See United States v. Leon*, 468 U.S. 897, 920, 921 (1984).  Based on the above, even if the undersigned had concluded that Detective Morgan's Affidavit was insufficient to establish probable cause, the search would still be valid because the officer acted in objective good faith in executing the warrant.

There are four circumstances under which the *Leon* good faith exception does not apply.  They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) " the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers cannot reasonably presume it to be valid."

*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).  *See also Leon*, 468 U.S. 897 at 832.  The Defendant alleges that the third circumstance applies in this case. He claims

"the affidavit in support of the warrant is so lacking in probable cause as to render official belief in its existence entirely unreasonable." (Doc. 50 at 5.)

In *United States v. Grant*, 490 F.3d 627 (8th Cir. 2007), the Court stated as follows in dealing with the good faith exception:

> Under the *Leon* good faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. . . In assessing whether the officer relied in good faith on the validity of the warrant, we consider the totality of the circumstances, **including any information known to the officer but not included in the affidavit**. . . .and we confine our inquiry "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization" . . .

*United States v. Grant*, 490 F.3d 627, 633 (8th Cir. 2007) (emphasis added). *See also, United States v. Guzman, supra*.

A review of the totality of the circumstances in this case supports that it was objectively reasonable for Detective Morgan to rely on the May 22, 2014 Search Warrant and that he did so in good faith. Detective Morgan testified that he relied on Judge Bloodworth's finding that the Search Warrant was supported by probable cause. (Doc. 49 at 18.) In addition to the information included in Detective Morgan's Affidavit, Detective Morgan had additional knowledge that would have provided further support for his belief that there was probable cause to search the Defendant's residence. First, the narcotics investigation referenced in the Affidavit was in fact an active drug investigation of the Defendant that had been ongoing for several weeks; the Affidavit simply described it as a "narcotics investigation in the area of Kinzer and Selma Streets…" Detective

Morgan indicated that law enforcement officers had received complaints regarding excessive traffic at the Defendant's residence for a long time prior to that. He also explained that undercover officers had been working in the area but were unable to get into the Defendant's house. Additionally, prior to observing Hovis depart from the Defendant's residence on May 21, 2014, Detective Morgan had interviewed Hovis regarding Hovis' experience purchasing drugs from the Defendant. During that prior interview, Hovis admitted to purchasing heroin from the Defendant on multiple occasions. Hovis also described the layout of the Defendant's residence and how the Defendant maintained heroin that he intended to distribute—Hovis explained that the Defendant kept it in a metal tin in his pocket. That is in fact how Hovis described the Defendant sold heroin to him on May 21, 2014. Furthermore, when the Search Warrant was executed on May 30, 2014, a metal tin was found in the Defendant's pocket and it contained heroin.

Having considered the totality of the circumstances, the undersigned concludes that the Warrant and Affidavit were also sufficient under *Leon* standards.

**II.C. The Defendant's Statements are admissible at trial.**

The Defendant also argues that any statements he made should be suppressed although he does not allege how any statement was taken from him in violation of his constitutional rights. The undersigned finds that the Defendant's statements were taken in accordance with his constitutional rights.

Generally, statements to law enforcement officers are subject to those procedures set out in *Miranda v. Arizona*, 384 U.S. at 436. The law enforcement officer must inform

a defendant of his or her rights prior to questioning. *Id.* at 444. The *Miranda* rights, however, are required only when the suspect is in custody and subjected to interrogation. *Id.* at 477-78. Custodial interrogation means questioning initiated by the law enforcement officer after the suspect has been taken into custody. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Voluntary statements by a suspect not being questioned are, of course, admissible at trial. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). Moreover, if, after being given *Miranda* warnings, a defendant agrees to make a statement, the government must show that the waiver was voluntary, knowing, and intelligent for the statement to be admissible. *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986); *North Carolina v. Butler*, 441 U.S. 369, 375-76 (1979); *Miranda*, 384 U.S. at 475.

It is undisputed that the Defendant was properly advised of his rights to remain silent and to counsel before any custodial interrogation took place. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Detective Morgan read the *Miranda* warning to the Defendant from an application on his cellular phone nearly immediately after advising the Defendant of the Search Warrant.

There is convincing evidence that the Defendant knew and understood his rights, and voluntarily answered questions after he was given the *Miranda* warning on May 30, 2014. The questioning of the Defendant was relatively brief in that the questions were simply related to drugs found on his person and a firearm under his bed. Detective Morgan described the encounter with the Defendant during the execution of the search warrant as a "calm contact." The officers did not handcuff the Defendant during the

questioning, they did not display their firearms while speaking with the Defendant, and they did not make any threats against the Defendant. Finally, the Defendant offered no testimony to rebut that of Detective Morgan concerning the circumstances leading to his incriminating statements, and he does not allege any facts to support that any officer improperly induced him to speak after the *Miranda* warning was given.

The undersigned finds that the Defendant made an intelligent and voluntary waiver of his rights prior to making the post-arrest statements, and further finds his admissions were made voluntarily. The Defendant's Motion to Suppress Statements should be denied.

**II.D. Defendant failed to demonstrate prejudice from alleged Rule 41 violations.**

The final argument asserted by the Defendant is that the evidence seized from his residence should be suppressed based on alleged violations of Fed.R.Crim.P. 41. The Defendant claims that he was not given a copy of the Search Warrant, or an inventory of the property that was taken on May 30, 2014. (Doc. 42 at 2.) In making this argument, the Defendant cites no factual support for this ground for suppression.

Rule 41(f)(1)(C) requires that "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken. . ." Even so, the Second, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits generally refuse to apply the exclusionary rule to violations of Rule 41 provisions "absent a constitutional infirmity or showing of prejudice or reckless disregard. *United States v. Freeman*, 897 F.2d 346, 349 (citations omitted). *See also United States v. Adams*, 401 F.3d 886, 893 (8th Cir. 2005) (prejudice

not proven where officers failed to provide comprehensive inventory of evidence seized during search of defendant's residence); *United States v. Nichols*, 344 F.3d 793, 799 (8th Cir. 2003) (even where search warrant inventory list is deficient, defendant cannot demonstrate prejudice and suppression is not required); and *United States v. Sigillito*, 759 F.3d 913, 925 (8th Cir. 2014) (failure to leave attachment to the search warrant at the scene did not warrant exclusion).

In light of the undersigned's earlier finding that Detective Morgan left copies of the Search Warrant and property receipts at the Defendant's residence at the conclusion of the May 30, 2014 search, the Rule 41 ground for suppression should be denied.

### III. Conclusion

In accordance with the Memorandum above, **IT IS RECOMMENDED** that the Defendant's Motions to Suppress Evidence (Docs. 34, 42) be **denied**.

The parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

_/s/ Abbie Crites-Leoni_
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of January, 2016.